IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| FRED GONZALES, | § | |
| Petitioner, | § § § | |
| v. | § § | 2:09-CV-0206 |
| RICK THALER, Director, Texas Department of Criminal Justice, Correctional Institutions Division, | § § § § § | |
| Respondent. | § | |

**REPORT AND RECOMMENDATION TO GRANT
RESPONDENT'S MOTION TO DISMISS and
TO DISMISS PETITION FOR A WRIT OF HABEAS CORPUS**

Petitioner has filed an application for a writ of habeas corpus challenging the calculation of the time he has accrued toward his sentences. Respondent has filed a motion arguing petitioner's application should be dismissed as time barred by the AEDPA statute of limitations. For the following reasons, respondent's motion to dismiss should be GRANTED.

I.
PROCEDURAL HISTORY

On November 25, 1997, in the 222nd Judicial District Court of Deaf Smith County, Texas, petitioner was convicted of nine (9) counts of burglary of a building. He received one 8-year sentence and eight (8) 10-year sentences, all to run concurrently.[1] Also on that date, petitioner was convicted of one count of escape and one count of assault on a public servant and received two (2) 6-year

---

[1] Petitioner committed his burglary offenses in 1991 and 1992.

concurrent sentences to run consecutively to his 8-year and 10-year sentences.[2] Petitioner's sentences began on February 7, 1992 for four of the 10-year burglary sentences, February 23, 1997 for one of the 10-year burglary sentences and the 8-year burglary sentence, and June 14, 1997 for three of the 10-year burglary sentences.[3] All of petitioner's sentences were calculated as one 16-year sentence for purposes of determining eligibility for release on parole and mandatory supervision and for the purpose of determining petitioner's final discharge date. *Cf. Ex parte Forward*, 258 S.W.3d 151, 152 (Tex.Crim.App. 2008).[4]

On March 12, 1998, petitioner became eligible for parole on four (4) of his 10-year sentences for burglary, *i.e.*, those sentences with a begin date of February 7, 1992. On September 14, 1998, petitioner was denied parole on these sentences. On October 3, 1998, petitioner became eligible for parole on the 8-year sentence for burglary, and the 10-year sentences for burglary with the begin dates of February 23, 1997 and June 14, 1997.

On March 10, 2000, petitioner filed a time credit dispute resolution form with the Texas Department of Criminal Justice (TDCJ) challenging the calculation of his sentences. On June 8, 2000, petitioner's time credit dispute was denied with a finding of no error in the calculation. On November 16, 2004, petitioner filed a second time credit dispute. On June 13, 2005, petitioner's second time credit dispute was denied with a finding of no error in the calculation.

---

[2] The sentences for petitioner's burglary convictions were mandatory supervision eligible, and the sentences for petitioner's escape and assault on a public servant were discretionary mandatory supervision eligible.

[3] *See Order to Show Cause and Instructions to Parties* entered September 16, 2010 for underlying state cause numbers and additional information.

[4] On September 5, 1997, with regard to sentences imposed on or after September 1, 1987, TDCJ and the Board of Pardons and Paroles discontinued the practice of treating cumulative sentences as a single combined sentence in lieu of performing time calculations on each consecutive case singularly and sequentially. Such change was adopted to be effective April 7, 1997 and codified at Volume 37, Section 145.4 of the Texas Administrative Code. The changes, however, were not interpreted by the state's highest court until June 21, 2000 in *Ex parte Kuester*, 21 S.W.3d 264, 265 (Tex.Crim.App. 2000). Petitioner's sentences continued to be calculated as a 16-year sentence until May 8, 2009.

On February 1, 2006, petitioner was paroled on all of his burglary sentences. On that same date, petitioner's 6-year sentences for escape and assault on a public servant began.[5]

On July 19, 2006, petitioner became eligible for parole on his 6-year escape sentence. On July 27, 2006, petitioner was denied parole on that sentence. On August 4, 2006, petitioner became eligible for parole on his assault on a public servant sentence.

On July 14, 2007, petitioner filed a third time credit dispute. On November 15, 2007, petitioner was denied parole on his 6-year sentences. On February 5, 2008, petitioner obtained sufficient credits to be released to discretionary mandatory supervised release on his 6-year sentences but, as detailed below, was not released. On April 7, 2008, petitioner's third time credit dispute was denied with a finding of no error in the calculation.

On July 2, 2008, petitioner filed two state habeas applications arguing his sentences were being improperly calculated. *Ex parte Gonzales*, No. 70,770-01, -02. Petitioner's grounds were interpreted as claims that he had been improperly denied parole and mandatory supervised release on his 6-year sentences, and that parole policies violated the prohibition against ex post facto laws as well as due process. On August 28, 2008, a TDCJ employee executed an affidavit which inaccurately inflated the number of petitioner's holding convictions (each conviction was repeated numerous times), and erroneously advised that while the discretionary mandatory supervision dates had been exceeded on his escape and assault on a public servant sentences, petitioner could not be released until he was conditionally released on the other non-existent, duplicative sentences showing on TDCJ records. Nonetheless, on October 22, 2008, the Texas Court of Criminal Appeals denied petitioner's applications without a written order on the findings of the trial court without a hearing.

---

[5] Petitioner's sentence for escape was credited with 130 days of jail credit and thus has a begin date of September 24, 2005. Petitioner's sentence for assault on a public servant was credited with 115 days of jail credit and thus has a begin date of October 9, 2005.

On May 8, 2009, *Ex parte Kuester* was applied and petitioner's sentences were changed to reflect concurrent sentences and applicable discharge dates.[6] On May 8, 2009, petitioner was released to mandatory supervision on his 6-year sentences. On August 20, 2009, petitioner filed the instant federal habeas corpus petition. Petitioner remains on mandatory supervision and is scheduled to discharge his 6-year escape sentence on September 24, 2011 (six years after its begin date of September 24, 2005) and his 6-year assault on a public servant sentence on October 9, 2011 (six years after its begin date of October 9, 2005).

## II.
## PETITIONER'S ALLEGATIONS

In his application, petitioner alleges respondent has extended petitioner's sentences in violation of the Constitution and laws of the United States because:

1.  Petitioner's 6-year sentences (which began to run on February 1, 2006) should have begun to run (a) when he became eligible for parole on any of his burglary sentences, (b) met the time credit requirement for release to mandatory supervision on any of his burglary sentences, or (c) when he served his burglary sentences day for day from the sentence begin date (disregarding the February 7, 2002 begin date and using June 14, 1997 as the begin date);

2.  TDCJ retroactively applied case law to refuse petitioner release to mandatory supervision on his sentences for burglary in violation of the Ex Post Facto clause;

3.  TDCJ retroactively applied rules and policies to refuse petitioner release to mandatory supervision on his sentences for burglary in violation of the Ex Post Facto clause; and

4.  Petitioner's sentences were improperly treated as a single 16-year sentence for calculating the date on which he became eligible for parole or mandatory supervision and when his sentences will discharge.

---

[6]Records indicate petitioner discharged four (4) 10-year sentences for burglary (those with February 7, 1992 begin dates) on August 17, 2006, his 8-year sentence for burglary (with the begin date of February 23, 1997) on February 23, 2005, his 10-year sentence for burglary (with the February 23, 1997 begin date) on February 23, 2007, and three (3) 10-year burglary sentences (those with June 14, 1997 begin dates) on June 14, 2007. With the modified dates, petitioner's sentences were discharged upon the completion of parole while petitioner was serving his 6-year sentences.

On October 28, 2010, respondent filed his motion to dismiss petitioner's habeas application as time barred by the AEDPA's 1-year statute of limitation.  Petitioner has not filed any response to the motion to dismiss.

### III.
### STATUTE OF LIMITATION

Respondent argues the 1-year statute of limitation in this case began to run on "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence." *See* 28 U.S.C. 2244(d)(1)(D).  As the AEDPA statute of limitations should be applied on a claim-by-claim basis, *see Fielder v. Varner*, 379 F.3d 113, 122 (3rd Cir. 2004), respondent has argued various factual predicate dates apply to petitioner's first ground and petitioner's second through fourth grounds.

Respondent argues that with due diligence, petitioner could have discovered his first ground (that his 6-year sentences should have begun when he became eligible for parole, met mandatory supervision credit requirements, or served his burglary sentences day for day from the begin sentence date) on the day he was sentenced, *i.e.*, November 25, 1997.  Alternatively, respondent argues petitioner should have discovered his first ground on October 28, 1998 when the Texas Court of Criminal Appeals issued its opinion in *Ex parte Ruthart*, 980 S.W.2d 469 (Tex.Crim.App. 1998) holding a sentence ceases to operate, and thus a consecutive sentence will begin, "either by … serving it in full through calendar time or by a parole panel designating [the inmate] as eligible for release to parole."  *Id.* at 474.

Neither of respondent's arguments are persuasive.  Respondent's first argument, that petitioner should have been aware of his claim on the date of his sentencing, would require petitioner to know and understand how TDCJ would be calculating his sentence, as well as the intricacies of sentence

time credit operations, before he even got to TDCJ. Respondent's second argument, that petitioner should have been aware of his claim when *Ex parte Ruthart* was decided, assumes the prison law library received the case and made it available to inmates on the date it was handed down. Even so, the Court finds on an alternative basis that petitioner's first ground is time barred by the statute of limitations. Through due diligence, petitioner could have discovered his 6-year sentences did not begin when he first became eligible for parole on four (4) of his 10-year sentences for burglary (those sentences with a begin date of February 7, 1992), on March 12, 1998. A simple request for a commitment inquiry after he reached parole eligibility would have revealed his 6-year sentences did not commence upon his parole eligibility date. Petitioner could also have discovered his 6-year sentences did not begin to run upon parole eligibility after he was denied parole on those 10-year sentences on September 14, 1998. The denial of parole on the on the four (4) burglary sentences should have alerted petitioner to inquire as to his time calculations. At the very latest, petitioner could have discovered his 6-year sentences did not begin to run when he became eligible for parole on the remaining burglary sentences on October 3, 1998. Petitioner's argument was clearly ripe, could have been discovered upon the parole eligibility dates for the burglary sentences, and could have been asserted in a time dispute claim. Consequently, the Court finds the date on which petitioner could have discovered the factual predicate of this argument, through the exercise of due diligence, was October 3, 1998 and, unless statutorily or equitably tolled, expired one year later on October 3, 1999.[7]

Petitioner did not file a time credit dispute with TDCJ within this 1-year period presenting his argument that his 6-year sentences should have begun when he became eligible for parole on any of his burglary convictions. Nor did petitioner timely file a state habeas application presenting this

---

[7]In *Ex parte Kuester,* 21 S.W.3d 264 (Tex.Crim.App. June 21, 2000), the Texas courts clarified long-existing Texas law that a sentence is completed or ceases to operate when, as relevant here, a parole panel approves the inmate for parole release rather than mere statutory eligibility for parole.

argument. Consequently, there was no statutory tolling of the 1-year limitations period and it expired on September 14, 1999. Petitioner filed his federal habeas application on August 20, 2009, almost ten years after the expiration of the limitations period. Petitioner's claim that TDCJ should have begun his 6-year sentences when he became eligible for parole on his burglary sentences is time barred.

The Court also finds petitioner's argument that his 6-year sentences should have begun to run when he accumulated sufficient time credits to be released to mandatory supervision on his burglary sentences to be time barred. There is no evidence in the record as to when petitioner actually accumulated flat and good time credits equaling the maximum term of his 8- or 10-year burglary sentences. Petitioner maintains, however, that he accumulated the adequate amount of time credits to be released to mandatory supervision on his burglary sentences on July 25, 2002 based on a March 20, 2002 Records Office document. Based on this assertion, petitioner could have discovered his 6-year sentences did not begin to run when he reached what he had determined to be his mandatory supervised release eligibility date on his burglary sentences, *i.e.*, July 25, 2002. Consequently, unless statutorily or equitably tolled, the 1-year limitation period for filing a federal habeas application expired one year later on July 25, 2003. The records indicate petitioner did not file his second time credit dispute until November 16, 2004, after the expiration of the 1-year limitation period. Petitioner's claim that TDCJ should have begun his 6-year sentences on July 25, 2002 when he acquired enough time credits to be released to mandatory supervision is also time barred.[8]

Utilizing the latest sentence begin date of June 14, 1997 for all of his burglary sentences, petitioner also argues his 6-year sentences should have started on June 14, 2007 when he discharged his 10-year burglary sentences day for day. Utilizing petitioner's alleged dates, the factual predicate

---

[8] Whether any of petitioner's claims were meritorious or not would require an extremely detailed analysis of all of petitioner's various offense dates, sentence begin dates and good time calculations, as well as whether TDCJ sentence calculation rules were discretionary or mandatory as of the critical dates. Any such exhaustive analysis is not warranted in light of the limitation bar.

of petitioner's claim could have been discovered on June 14, 2007. Consequently, unless statutorily or equitably tolled, the 1-year limitation period for filing a federal habeas application expired one year later on June 14, 2008. Petitioner filed his third time credit dispute on July 14, 2007 (presumably arguing this claim), and was denied relief on April 7, 2008, thereby statutorily tolling the limitations period during the pendency of the proceeding. On July 2, 2008, almost three (3) months after the denial of his time credit dispute, petitioner filed his state habeas applications arguing his sentences were being improperly calculated. He was denied relief on this state habeas on October 22, 2008. The pendency of his state habeas proceeding also tolled the limitations period. Almost ten (10) months later, petitioner filed the instant federal habeas application on August 20, 2009. Consequently, this claim is also time barred.[9]

Petitioner's second and third grounds assert TDCJ violated the prohibition against Ex Post Facto laws by applying case law, rules and policies retroactively to refuse him release to mandatory supervision on all but the last of his consecutive sentences. Petitioner's fourth ground challenges the manner in which TDCJ has calculated his sentences for purposes of determining his eligibility dates for parole, his release(s) to mandatory supervision, and his discharge dates. Specifically, petitioner appears to assert error in treating petitioner's stacked sentences as a single 16-year sentence.

Respondent contends petitioner, through due diligence, could have discovered these claims when he received his consecutive sentences for escape and assault on a public servant on November 25, 1997. Respondent maintains petitioner could have discovered the manner in which TDCJ was calculating his sentence (cumulatively v. individually) for purposes of parole/mandatory supervision

---

[9] If this ground were not time barred, petitioner's argument would be to his disadvantage. Petitioner's 6-year sentences began February 1, 2006, when he was paroled on his burglary sentences, placing him in a better position than if they began on June 14, 2007.

eligibility dates, as well as petitioner's claim that TDCJ refused him release to mandatory supervision in violation of the Ex Post Facto clause, as of the date the state district court entered his sentences. Again, this argument is not persuasive but the Court, on other grounds, finds petitioner's claims are time barred.

While the Court does not have documentation reflecting when petitioner first learned TDCJ was treating his consecutive sentences as a single 16-year sentence, or when petitioner learned of a projected parole eligibility date or mandatory supervised release date, it is highly unlikely such would have been made available to petitioner as of the date of his convictions. However, such information should have been made available to petitioner at or near the time petitioner initiated his first time dispute proceeding with TDCJ on March 10, 2000. Regardless, it is clear petitioner was aware of the manner in which his sentences and his parole and mandatory supervision time credits were being calculated as of March 20, 2002, the date of a time sheet petitioner has attached as an exhibit to his first ground (also found at Tr. 19 of petitioner's state habeas, *Ex parte Gonzales*, No. 70,770-02). Such time sheet reflects petitioner's sentence of record as 16 years and reflects the amount of flat, good and work time accrued toward parole and release to mandatory supervision (*i.e.*, 9 years, 7 months, and 25 days). Consequently, petitioner could have discovered the manner in which TDCJ was calculating his sentence and eligibility dates, as well as any disagreement with such calculations, on March 20, 2002. Consequently, unless statutorily or equitably tolled, the 1-year limitation period for filing a federal habeas application expired one year later on March 20, 2003. Petitioner did not file his second time credit dispute until November 16, 2004, after the expiration of the 1-year limitation period. Petitioner's claim that TDCJ was wrongfully treating his stacked sentences as a single 16-year sentence for purposes of calculating petitioner's eligibility for parole, release date to mandatory supervision, and discharge date is time barred.

Petitioner appears to contend *Ex parte Ruthart* 980 S.W.2d 469 (Tex.Crim.App. 1998) was retroactively applied to him, in violation of ex post facto prohibitions, to refuse his mandatory supervised release on his burglary sentences. *Ruthart* was decided October 28, 1998. As noted above, however, petitioner contends he reached eligibility to be released to mandatory supervision on July 25, 2002 based on a March 20, 2002 Records Office document. Based on this assertion, petitioner could have discovered he had not been granted release to mandatory supervised release on his burglary sentences on July 25, 2002 and could have inquired as to the basis for TDCJ's refusal to grant him mandatory supervision on those sentences and if, in fact, it was based upon application of *Ex parte Ruthart*. Consequently, unless statutorily or equitably tolled, the 1-year limitation period for filing a federal habeas application expired one year later on July 25, 2003. The records indicate petitioner did not file his second time credit dispute until November 16, 2004, after the expiration of the 1-year limitation period. Petitioner's claim that TDCJ should have begun his 6-year sentences on July 25, 2002 when he acquired enough time credits to be released to mandatory supervision is time barred.

For all of the reasons set forth above, petitioner GONZALES' petition for writ of habeas corpus is time barred and should be dismissed.

## IV.
## RECOMMENDATION

It is the RECOMMENDATION of the undersigned United States Magistrate Judge that respondent's motion to dismiss be GRANTED, and petitioner's federal habeas corpus application be DISMISSED.

V.
## INSTRUCTIONS FOR SERVICE

The United States District Clerk is directed to send a copy of this Report and Recommendation to each party by the most efficient means available.

IT IS SO RECOMMENDED.

ENTERED this 9th day of September, 2011.

_____
CLINTON E. AVERITTE
UNITED STATES MAGISTRATE JUDGE

### * NOTICE OF RIGHT TO OBJECT *

Any party may object to these proposed findings, conclusions and recommendation. In the event parties wish to object, they are hereby NOTIFIED that the deadline for filing objections is fourteen (14) days from the date of filing as indicated by the "entered" date directly above the signature line. Service is complete upon mailing, Fed. R. Civ. P. 5(b)(2)(C), or transmission by electronic means, Fed. R. Civ. P. 5(b)(2)(E). **Any objections must be filed on or before the fourteenth (14th) day after this recommendation is filed** as indicated by the "entered" date. *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(2); *see also* Fed. R. Civ. P. 6(d).

Any such objections shall be made in a written pleading entitled "Objections to the Report and Recommendation." Objecting parties shall file the written objections with the United States District Clerk and serve a copy of such objections on all other parties. A party's failure to timely file written objections to the proposed findings, conclusions, and recommendation contained in this report shall bar an aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings, legal conclusions, and recommendation set forth by the Magistrate Judge in this report and accepted by the district court. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996); *Rodriguez v. Bowen,* 857 F.2d 275, 276-77 (5th Cir. 1988).